## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
|       GWENDOLYN JACKSON, | : | Chapter 7 |
| | : | |
|       Debtor. | : | Bky. No. 09-13559 ELF |
| | : | |
| PATRICIA R. GRAY, | : | |
| | : | |
|       Plaintiff, | : | Adv. No. 09-243 ELF |
| | : | |
|       v. | : | |
| | : | |
| GWENDOLYN L. JACKSON, | : | |
| | : | |
|       Defendant. | : | |

# M E M O R A N D U M

## I. INTRODUCTION

Gwendolyn L. Jackson ("the Debtor") filed a voluntary bankruptcy petition under chapter 7 of the Bankruptcy Code on May 12, 2009. The plaintiff, Patricia R. Gray ("Gray" or "the Plaintiff"), commenced the above adversary proceeding by filing a complaint ("the Complaint") on August 3, 2009. Gray seeks a determination that the debt owed to her by the Debtor is non-dischargeable under 11 U.S.C. §§523(a)(2)(A), (a)(4), or (a)(6). Gray also objects to the Debtor's discharge pursuant to 11 U.S.C. §727(a)(3).

Gray, who is acting pro se, is both the Debtor's sister and a judgment creditor. The judgment was entered in an action in which Gray asserted claims for breach of fiduciary duty and for an accounting of real estate rents derived from a property that the parties owned jointly.

-1-

Presently pending before the court are cross motions for summary judgment.

After reviewing the motions and the supporting evidentiary matter, I conclude that Gray is

entitled to summary judgment on her objection to the Debtor's discharge under 11 U.S.C.

§727(a)(3). Based on the undisputed facts in the record, Gray has established that: (1) the Debtor

failed to keep or preserve recorded information regarding her financial condition and (2) the

Debtor has not come forward with any evidence to support the "justification" defense for that

failure.

Accordingly, I will enter an order granting judgment in favor of the Plaintiff and denying

the Debtor's discharge.[1]

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The State Court Judgment

In 1981, Gray and the Debtor purchased a parcel of real estate located at 2276-78 N. 51st

Street, Philadelphia, PA ("the Property"). They own the Property as tenants in common. The

Property has been the subject of much litigation between the parties for many years. See In re

Jackson, 2007 WL 1188202, at *1 n.1 (Bankr. E.D. Pa. Apr. 18, 2007) (referencing a number of

state court actions between the parties).

On December 12, 2000, Gray filed an action against the Debtor and several alleged

occupants of the Property, docketed at August Term 2000, No. 2040, in the Pennsylvania Court

---

[1]    The denial of the Debtor's discharge pursuant to 11 U.S.C. §727(a)(3) makes it
unnecessary for me to consider the cross motions with respect to Gray's claims under §523(a). See, e.g., In
re Bailey, 375 B.R. 410, 421 (Bankr. S.D. Ohio 2007).  But see In re Horton, 152 B.R. 912, 913-14
(Bankr. S.D. Tex. 1993).

of Common Pleas, Philadelphia County ("the State Court").  Gray alleged two causes of action

against the Debtor:

> 1)   breach of fiduciary duty for failing to pay the monthly mortgage payments and
>      certain utility bills resulting in foreclosure proceedings and liens against the
>      Property; and,
>
> 2)   an accounting of rents collected on the Property.

On January 26, 2001, the State Court ordered the Debtor to provide Gray with an

accounting of rents from the Property for the period of January 1, 1981 to December 31, 2000

within forty-five (45) days of the date of the order.  The Debtor failed to provide the accounting.

The State Court then entered a series of orders assessing monetary damages against her.[2]  The

litigation culminated in the entry of a default judgment in favor of Gray on July 26, 2005 ("the

State Court Judgment").  On November 30, 2007, the State Court assessed damages of

$300,000.00.  It is this liability that Gray seeks to have excepted from the Debtor's discharge

under 11 U.S.C. §523(a), if the Debtor's discharge is not denied under §727(a)(3).


### B.  The Debtor's Bankruptcy

On May 12, 2009, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy

Code.  This is the Debtor's third bankruptcy filing since 2003.  In the present bankruptcy case, the

---

[2]      The State Court entered an order on June 14, 2002 imposing a fine of $10.00 per day
against the Debtor for failure to provide the accounting.  The Debtor was again fined on February 6, 2004
for failing to comply with the June 14, 2002 order.  The State Court sanctioned the Debtor $5,200.00 and
fined her $20.00 per day "due to her dilatory and obdurate behavior in failing for more than 30 months to
provide an accounting."

Debtor filed her bankruptcy schedules on June 11, 2009.[3]

On Schedule B, the Debtor claimed a "50% share of stock in Wynnefield Educational Services, Inc." ("WES"). (See Bky. No. 09-13559, Schedule B) (Doc. # 25).

According to the Debtor's Statement of Financial Affairs, WES is a primary school that operated from 1992 until August, 2009. (See Bky. No. 09-13559, Statement of Financial Affairs) (Doc. # 37). Pennsylvania Department of State records show that WES is a Pennsylvania closely held corporation. (See Gray's Motion, Ex. B). The Debtor is the President and Ingrid D. Johnson is the Vice President of WES. Ingrid D. Johnson is the Debtor's and Gray's sister. On May 1, 2008 (prior to the Debtor's present bankruptcy filing), WES filed a voluntary chapter 11 bankruptcy petition with this court. (See Bky. No. 08-12868). WES operated under several different names prior to the filing, including "Wynnefield Primary Academy." (See Bky. No. 08-12868, Doc. # 1).[4] During WES's bankruptcy case, the Debtor represented to the court that she was authorized to act on behalf of WES and was in control of the corporation while Ingrid Johnson was incapacitated due to medical problems. (See Bky. No. 08-12868, Doc. #'s 40, 41). WES's chapter 11 case was dismissed on motion of the U.S. Trustee on June 25, 2008, less than

---

[3]    I may take judicial notice of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); see also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

[4]    WES's bankruptcy petition also states that WES operated under the names Wynnefield Educational Services, Wynnefield Academy and Wynnefield Primary School.

two months after it was filed.[5]

On Schedule I, the Debtor listed her only employer as "Wynnefield Primary Academy" and indicated that she was receiving a salary as its administrator.  At the bottom of Schedule I, the Debtor stated: "Wynnefield Primary Academy has ceased operating as an entity.  Debtor has received her last paycheck from the school and will be starting a new occupation in the near future."

The Debtor did not list ownership in any other business entity on her bankruptcy schedules.

## C. The Adversary Proceeding

Gray instituted this adversary proceeding on August 3, 2009.  The Debtor filed a motion to dismiss the Complaint.  The court granted the motion, with leave to file an amended complaint. (See Adv. Proc. No. 09-243, Doc. #'s 15, 20).  The Plaintiff filed an amended complaint ("the Amended Complaint") (Adv. No. 09-243, Doc. # 22).  The Debtor filed an answer ("the Answer") to the Amended Complaint on January 16, 2010.

During the course of discovery, a number of disputes arose between the parties.  Most notably, the Debtor filed a Motion for Protective Order, seeking to limit substantially Gray's requests for discovery, which included a Request for Production of Documents, Requests for Admission, Interrogatories, and a Supplemental Request for Production of Documents.  (See

---

[5]      The Debtor's disclosure in her individual bankruptcy case of her 50% ownership interest in WES is consistent with the disclosures in WES's bankruptcy schedules.  Gwendolyn Jackson and Ingrid D. Johnson were listed on WES's Statement of Financial Affairs as each owning 50% of the corporation. (Bky. No. 08-12868, Doc. # 24).

Adv. No. 09-243, Doc. # 37).  The Debtor alleged that Gray's discovery requests were unduly

burdensome and excessive and duplicative of the discovery requested in a pending state court

action.

After a hearing, I granted the Motion for a Protective Order in part and denied it in part.

(See Order dated May 26, 2010) (Adv. No. 09-243, Doc. # 41).  In particular, as outlined in

paragraph 2 of the May 26, 2010 Order, I directed the Debtor to produce any financial

statements, general ledgers, accounts receivable journals, cash disbursement journals, sales

journals, and federal, state, and local tax returns, for the one year preceding the Debtor's

bankruptcy for any business in which the Debtor had an equity interest.  (Id.).

Gray later filed a Motion for Discovery Sanctions, arguing that the Debtor failed to

produce several of the documents ordered by this court.  (See Adv. No. 09-243, Doc. # 50).  I

again ordered the Debtor to comply with paragraph 2 of the May 26, 2010 Order, and

additionally, required the Debtor to produce bank statements for 2009.  Thereafter, the only

financial documents the Debtor produced were a 2004 federal corporate income tax return and

the 2009 bank statements for WES.  (See Pl.'s Motion for Summ. J., Ex. O; Pl.'s Supplemental

Mem. of Law, Ex. A).

On July 16, 2010, the Debtor filed a Motion for Summary Judgment ("the Debtor's

Motion") as to all claims raised in the Amended Complaint.  (Adv. No. 09-243, Doc. # 52).  Gray

filed a Response and Memorandum of Law in opposition to the Debtor's Motion.  (Adv. No. 09-

243, Doc. # 61).

Following a pretrial conference held on September 30, 2010, I extended certain pretrial

deadlines to allow Gray to file a cross motion for summary judgment and established a briefing

-6-

schedule. (See Adv. No. 09-243, Doc. # 73). Gray filed her Motion for Summary Judgment

("Gray's Motion") and a response to the Debtor's Motion on October 28, 2010. (Adv. No. 09-

243, Doc. #'s 75, 76). The Debtor then filed a response to Gray's Motion, to which Gray replied

with a Supplemental Memorandum in Support of the Cross Motion. (Adv. No. 09-243, Doc. #'s

78, 79).

Briefing on the cross motions for summary judgment is now complete.


## III. DISCUSSION

### A. Legal Standard for Summary Judgment

The standard for evaluating a summary judgment motion is well established and has been

stated in numerous written opinions in this district.[6] Pursuant to Fed. R. Civ. P. 56(c), summary

judgment should be granted when the "pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[7]

Before a motion for summary judgment may be granted, the court must find that the

motion alleges facts that are both undisputed and if proven at trial would require a directed

---

[6]    E.g., In re Pure Weight Loss, Inc., 446 B.R. 197, 202-03 (Bankr. E.D. Pa. 2009) (per
Raslavich, Ch.J.); In re Total Containment, Inc., 2008 WL 682455, at *1-3 (Bankr. E.D. Pa. Mar. 5,
2008) (per Fox, J.); In re Lilly, 2006 WL 3859128, at *2 (Bankr. E.D. Pa. Oct. 27, 2006) (per FitzSimon,
J.); In re LaCheen, 2005 WL 1155257, at *2 (Bankr. E.D. Pa. Apr. 28, 2005) (per Sigmund, J.); In re
Lewis, 290 B.R. 541, 545 (Bankr. E.D. Pa. 2003) (per Carey, J.).

[7]    Fed. R. Civ. P. 56 is applicable to this adversary proceeding by operation of Fed. R.
Bankr. P. 7056.

verdict in favor of the movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir.

1993). If the movant meets this initial burden, the responding party may not rest on his or her

pleadings, but must designate specific factual averments, through the use of affidavits or other

permissible evidentiary material, that demonstrate a triable factual dispute. Celotex Corp. v.

Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50

(1986). Such evidence must be sufficient to support a factfinder's determination in favor of the

nonmoving party. Anderson, 477 U.S. at 250. Evidence that merely raises some metaphysical

doubt regarding the validity of a material facts is insufficient. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In considering the evidentiary matter submitted in support of and in opposition to a

summary judgment motion, the court's role is not to weigh the evidence, but only to determine

whether there is a disputed, material fact for determination at trial. Anderson, 477 U.S. at 249. A

dispute about a "material" fact is "genuine" only if the evidence is such that a reasonable

factfinder could return a verdict for the non-moving party. Id. at 248. All reasonable inferences

must be drawn in favor of the non-moving party and against the movant. United States v. 717 S.

Woodward St., 2 F.3d 529, 533 (3d Cir. 1993).

The parties' respective burdens of proof also play a role in determining the merits of a

summary judgment motion.

If the movant is the defendant or the party without the burden of proof, the movant must

demonstrate the absence of a genuine issue of material fact, but the movant is not required to

support the motion with affidavits or other materials that negate the opponent's claim. Rather,

the movant may assert that the party with the burden of proof has not come forward with

-8-

evidence to support one or more elements of its claim. See Celotex, 477 U.S. at 323.

On the other hand, if the movant is the party with the burden of proof at trial, the standard is more stringent. The movant "must produce enough evidence to justify a directed verdict in its favor in order to meet its initial burden." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992); see also In re Newman, 304 B.R. 188, 193 (Bankr. E.D. Pa. 2002).

Therefore, Gray and the Debtor have different burdens of proof to meet in order to prevail on their respective motions for summary judgment.

For Gray to prevail on her motion as to any of her claims, she must come forward with evidence supporting each element of the claim and demonstrate that the Debtor has not come forward with evidence sufficient to create a triable factual dispute regarding any element of the claim.

As the party without the burden of proof, the Debtor's burden differs. For the Debtor to obtain summary judgment with respect to any of Gray's claims, she must show that there are no material facts in dispute and that either: (a) Gray has not come forward with any evidence to support an element of the claim or that the undisputed evidence negates an element of Gray's claim. See, e.g., Newman, 304 B.R. at 193-94.

### B.  11 U.S.C. §727(a)(3)

A discharge under §727(a) is a "privilege, not a right," that is reserved for the honest debtor who has dealt fairly with the court and his creditors. In re Spitko, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (quoting In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996)). The purpose

of §727(a)(3), in particular, "is to make the privilege of discharge dependent on a true

presentation of the debtor's financial affairs." In re Stumpf, 2011 WL 503868, at *6 (Bankr.

M.D. Pa. Feb. 20, 2011) (quoting In re Scott, 172 F.3d 959, 969 (7th Cir. 1999).

Section 727(a)(3) provides that the court shall grant the debtor a discharge, unless

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such act or failure to act was justified under all of the circumstances.

11 U.S.C. §727(a)(3).

As a precondition to the bankruptcy discharge, §727(a)(3) requires a debtor to produce

enough information for creditors to determine and track the debtor's financial and business

transactions for a reasonable time prior to the bankruptcy. Juzwiak, 89 F.3d at 427.

To prevail on a claim under §727(a)(3), the plaintiff must prove that:

1. the debtor failed to maintain and preserve adequate records; and

2. this failure to maintain makes it impossible to ascertain the debtor's financial condition and material business transactions.

E.g., In re Yanni, 354 B.R. 708, 712 (Bankr. E.D. Pa. 2006) (citing Meridian Bank v. Alten, 958

F.2d 1226, 1230 (3d Cir. 1992). The plaintiff must prove the objection to discharge by a

preponderance of the evidence. In re Spitko, 357 B.R. at 298 (citing In re Adams, 31 F.3d 389,

393–94 (6th Cir. 1994)); see also Fed. R. Bankr. P. 4005.

Under §727(a)(3), the creditor has the initial burden of showing that the debtor's records

are inadequate to ascertain the debtor's financial condition. In re DiLoreto, 266 F. App'x 140,

145 (3d Cir. 2008) (nonprecedential); Meridian Bank, 958 F.2d at 1232; In re Spitko, 357 B.R. at

-10-

306. The bankruptcy court has broad discretion in determining whether a debtor's records are sufficient under §727(a)(3). In re Shapiro, 59 B.R. 844, 848 (Bankr. E.D.N.Y. 1986). Once the creditor meets this initial burden, the burden shifts to the debtor to provide an adequate justification for the failure to keep or preserve records. In re Ryan, 285 B.R. 624, 631 (Bankr. W.D. Pa. 2002).

In Meridian Bank, the Court of Appeals described the nature of a debtor's affirmative record keeping duty under §727(a)(3). Initially, the court characterized the duty in purely objective terms:

> [S]ufficient record keeping varie[s] with the facts of each case, but in all cases complete disclosure [is] required.
>
> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

Meridian Bank, 958 F.2d at 1230 (emphasis added) (quoting In re Underhill, 82 F.2d 258, 259-60 (2d Cir. 1936)).

Later in its opinion, the Meridian Bank court appeared to suggest that the objective duty may be tempered by subjective considerations: "Depending upon the sophistication of the debtor and the extent of his activities, different record keeping practices are necessary." 958 F.2d at 1231.

Another court has described the recordkeeping requirement as follows:

> Adequacy for purposes of § 727(a)(3) may differ from one debtor to the next. Different record-keeping practices may be adequate in different contexts,

-11-

depending on the debtor's sophistication and the extent of the debtor's financial activities. The more sophisticated and complex a debtor's business practices are, the higher is the standard for keeping records to which they are held.

Ryan, 285 B.R. at 630-31.

If the court determines the debtor's record keeping to be inadequate, the focus shifts on the asserted justification for the inadequacy, as does the burden of proof. The burden of proof shifts to the debtor to prove an adequate justification for the failure to maintain or preserve adequate records. Meridian Bank, 958 F.2d at 1233.

Section 727(a)(3) does not specifically define what constitutes a justification; rather, it is for the court to determine under all of the circumstances of the case. Id. at 1231. There are several factors that courts routinely consider to assess whether the debtor has provided a satisfactory justification for the failure to keep records: "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." Id. (quoting In re Wilson, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)); see also Stumpf, 2011 WL 503868, at *7 (lack of records is justified if debtor's conduct is what a "normal, reasonable person would do under similar circumstances") (quoting Meridian Bank, 958 F.2d at 1231)).

Finally, §727(a)(3) is designed to give the trustee and creditors a fair and complete picture of the debtor's financial affairs and to allow them to trace material business transactions. Meridian Bank, 958 F.3d at 1230. Consistent with this purpose, courts have held that the debtor's disclosure requirement "extends beyond the property of the estate to include all 'business

-12-

transactions' which shed light on the financial condition of the debtor." Spitko, 357 B.R. at 307

(quoting Office of Comptroller General of Republic of Bolivia ex rel. Bolivian Air Force v.

Tractman, 107 B.R. 24, 27 (S.D.N.Y. 1989)).  In appropriate circumstances, the debtor's

disclosure requirement extends to the books and records of a closely held corporation in which

the debtor holds an equity interest.  Id. (quoting In re Ross, 1999 WL 10019, at *4 (Bankr. E.D.

Pa. Jan. 4, 1999) ("corporate records may be the best measure of the debtor's financial condition .

. . [where] there is a direct interface between a business person's personal finances and the

finances of the corporation")); In re Womble, 289 B.R. 836, 857 (Bankr. N.D. Tex. 2003).


## C. The Parties' Contentions

Gray moved for summary judgment on her claims under §727(a)(3).[8]  Gray asserts that the

Debtor was involved with numerous businesses, either as an equity holder or as an officer or

---

[8]      Gray also moved for summary judgment under §523(a)(4).  The substance of Gray's
argument is that the doctrine of collateral estoppel precludes the Debtor from challenging the
dischargeability of the State Court Judgment.  Gray contends that the State Court Judgment meets all of the
requirements for application of collateral estoppel, see, e.g., In re Jacobs, 381 B.R. 128, 142 & nn.22-23
(Bankr. E.D. Pa. 2008) (collecting authorities).  In support of her position, Gray cites In re Docteroff, 133
F.3d 210 (3d Cir. 1997).  Docteroff involved a debtor who had been sued for fraud before filing his
bankruptcy case.  In the prior action, the debtor failed to comply with discovery orders and, as a sanction,
the court entered a default judgment in favor of the creditor.  After the debtor filed his bankruptcy case, the
creditor filed an adversary proceeding alleging that the default judgment was non-dischargeable under
§§523(a)(2), (4), and (6).  The bankruptcy court held that the debtor was collaterally estopped from
denying that the debt was incurred by fraud or embezzlement. The Court of Appeals held that collateral
estoppel was properly applied based on the prior judgment because the debtor had been given sufficient
opportunity to be heard on the issue of liability.

Without discussing Docteroff, the Debtor argues that the State Court Judgment should not
be given preclusive effect under the doctrine of collateral estoppel because the underlying issue in the State
Court was never actually litigated.

I do not reach this issue.  See n.1, supra.

-13-

director, during the period leading up to the filing of her current chapter 7 bankruptcy. Gray

alleges that the Debtor was involved in some capacity as either a co-founder and/or corporate

officer of the following businesses: WES; Wynnefield Educational Services; Wynnefield Primary

Academy; Wynnefield Academy; Wynnefield Primary School; and Wynnefield Community

Resource Center, Inc. ("WCRC"). However, with the exception of WCRC, these entities appear

to be nothing other than different trade names for WES. See n.4, supra.

Putting aside WCRC, as to which there is little in the record, the crux of Gray's Motion is

that the Debtor produced financial information inadequate to permit creditors to ascertain the

financial condition of WES. Gray also alleges that the Debtor commingled her personal finances

with those of WES.

The Debtor is terse in seeking denial of Gray's Motion and requesting summary judgment

on her own behalf. She argues, conclusorily that the Plaintiff failed to support with sufficient

evidence one or more elements of each particular claim.[9] Also, while the Debtor admits that she

was unable to provide some of the documents requested, she claims the information that was

provided was adequate. The Debtor contends that thirteen (13) months of WES's bank

statements should be sufficient for Gray to ascertain the Debtor's financial condition. (Debtor's

Resp. to Pl.'s Mot. for Summ. J. at 7 (unpaginated)). The Debtor further argues that she supplied

---

[9]        For instance, in connection with Gray's §523(a)(2) claim (a claim that is not the subject of
Gray's summary judgment motion), the Debtor argues that the Amended Complaint is devoid of any
allegations of false pretenses, false representations, or actual fraud and the "lack of specific allegations that
raise genuine issues of material fact . . . warrant the conclusion that [§523(a)(2)(A)] is not applicable."
(Debtor's Mem. of Law in Support of the Mot. for Summ. J. at 5 (unpaginated)). The Debtor's argument
regarding the sufficiency of the pleadings is a non-sequitur in the summary judgment context; the pending
motions were filed under Rule 56, not Rule 12(b)(6). However, I will interpret the Debtor's argument
liberally in connection with Gray's §727(a)(3) claim and consider the Debtor's contention to be that there is
an absence of evidence in the record to support one or more elements of Gray's claim.

-14-

information to the chapter 7 trustee at or after the §341 Meeting of Creditors and that the chapter

7 trustee concluded his investigation and filed a report of no distribution. The Debtor did not

submit any evidence showing what information was provided to the chapter 7 trustee or whether

the same information was provided to Gray. In any event, the Debtor has not given any reason or

justification for her failure to produce all of the documents Gray requested (other than WES's

federal corporate income tax return and its 2009 bank statements). She appears to ground her

defense solely on the argument that she has already provided sufficient information for creditors

to ascertain her financial condition.


### D. **Gray Has Established that the Debtor Failed to Maintain or Preserve Records**

During the discovery phase of this proceeding, Gray requested the production of various

documents, including general ledgers, cash receipts and disbursements journals, federal, state, and

local income tax returns, sales journals, and accounts receivables, for each business entity in which

the Debtor had an ownership interest for the year preceding the bankruptcy. Gray filed two

discovery motions which resulted in the production of precious few documents relating to WES's

financial affairs: a 2004 federal corporate income tax return and bank statements from 2009. The

Debtor maintained that she did not have any other WES books or records in her "possession,

custody or control." (Gray's Mot., Ex. O). She also responded by promising that she would

make a request to Clarence Johnson to provide any materials in his possession if they exist. (Id.).

The Debtor offered no evidence describing Clarence Johnson's position with WES, the services

he performs for WES, or whether he is in possession of the corporate financial records. In the

end, the Debtor never supplemented her production of WES documents.

-15-

The 2004 corporate tax return for WES shows a gross profit of $586,707.00, cost of goods sold of $431,161.00, and a gross profit of $155,546.00. Somewhat predictably, the corporate return shows extensive itemization for WES's expenses, including depreciation, insurance, utilities, overhead, legal expenses, taxes, and officers' salaries. (Gray's Mot., Ex. O). It is highly improbable that the 2004 corporate return was prepared for WES based on bank statements and canceled checks alone. It is more likely that it was based on some form of a general ledger, at the very minimum. Further, the only reasonable inference to be drawn from WES's corporate return is that WES was a profitable small business with a reasonably sophisticated accounting system in place at one time. However, the Debtor produced no documents or ledgers that would reflect WES's business income and expenses at any time prior to the filing of her personal bankruptcy case. She also failed to produce WES tax returns or financial records of any kind for the four year period immediately prior to the filing of the bankruptcy. See In re Strbac, 235 B.R. 880, 884 (B.A.P. 6th Cir. 1999); Womble, 289 B.R. at 858 ("a debtor's failure to file timely tax returns – especially for several years in a row – is a blatant example of a failure to maintain adequate records").

Gray attached the bank statements produced by the Debtor to her Supplemental Memorandum of Law. (Adv. Proc. 09-243, Doc. # 79). I note that the statements are for the period of December 2008 through December 2009; however, the February, March and July 2009 statements are missing and the information as a whole is thus, of limited value as it is impossible to calculate the total amount of deposits and withdrawals from the checking account during that period.

In addition to this limitation, a review of the statements demonstrates that at least

-16-

$150,000.00 flowed through WES' bank account during this time.  There are tens of thousands of dollars of deposits and withdrawals, including cash transactions by "ATM," each month that WES was actively operating, without any description or supporting documentation – they therefore, cannot be attributed to any particular business transaction or purpose.  See Juzwiak, 89 F.3d at 428 (holding that checking account ledgers, cancelled checks, bank statements, and tax returns do not enable creditors to track financial dealings with any degree of accuracy, as these types of records do not disclose the sources of funds or substantiate expenses); Womble, 289 B.R. at 857 ("providing the court with a stack of cancelled checks and deposit account statements simply does not meet the[] burden under § 727," especially where the bank statements fail to identify the source of payments) (quoting Union Planters Bank, N.A. v. Connors, 283 F.3d 896, 900 (7th Cir. 2002)).  The information that the Debtor has provided to Gray merely shows that funds came into WES and then were paid out, making it impossible to determine the source of income or the nature of expenses.  Further, there are several purchases made on the WES account that are clearly not related to the operation of a primary school (i.e., fitness club membership fees, airfare, radiology services, gas purchases).  See In re Kennington, 393 B.R. 430, 435 (Bankr. N.D. Miss. 2008) (commingling of assets between debtor and another entity can lead to violation of §727(a)(3)); Womble, 289 B.R. at 858 (holding that the debtor has failed to maintain adequate records when the "debtor's records lead to a 'confusion of assets' between the debtor and his entities") (citing In re Dreyer, 127 B.R. 587, 594 (Bankr. N.D. Tex. 1991)).

As stated earlier, when an individual debtor's income is derived in substantial part from a closely held corporation controlled by the debtor, the books and records of the corporation can be critical in evaluating the financial condition of the individual debtor  – if for no other reason,

-17-

because the debtor is in a position to commingle corporate and personal assets.  It is obvious that Gray's intent in seeking the books and records of WES and any other corporations controlled by the Debtor was to explore the possibility that money or other assets flowed from WES to the Debtor.

On this record, I conclude that WES' operations were sufficiently substantial that it is reasonable to expect that it maintained some system of accounting for its cash inflows and outflows; and, that if it did not, it should have.  E.g., In re Scott, 172 F.3d 959, 969 (7th Cir. 1999) (section 727(a)(3) places "an affirmative duty on the debtor to create books and records accurately documenting his business affairs"); see also In re Jacobowitz, 296 B.R. 666, 672-73 (Bankr. S.D.N.Y. 2003) (even if the debtor is unsophisticated and his business is not complex, the debtor is not justified in failing to maintain bare minimum books and records from which financial transactions may be ascertained); In re Dias, 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988) (to obtain a discharge, a debtor is required to maintain minimal financial records to provide creditors with basic information regarding the profitability of the business).

I further conclude that the Debtor's creditors, upon request, were entitled to have access to the type of financial information that Gray requested with respect to the Debtor's closely held corporation, WES.  The Debtor has not produced that information.  Therefore, I conclude that Gray has established a prima facie case that the Debtor has failed to maintain adequate records.

### E. The Debtor Has Not Established an Adequate Justification

Next, I consider the Debtor's "justification" defense.

As stated earlier, §727(a)(3) does not specifically define what constitutes a satisfactory

-18-

justification. As a threshold matter, a debtor "must do more than profess a belief that his records were sufficient or that it was not his practice to keep additional records." In re Pimpinella, 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991). It is then up to the court to determine what is reasonable under the circumstances of the case. Meridian Bank, 958 F.2d at 1231. Thus, reported decisions in which the defense is successful tend to be fact-intensive. See, e.g., In re Cox, 41 F.3d 1294, 1300 (9th Cir. 1994) (reliance on spouse to keep books and records justified under the circumstances); In re Dam Huynh, 392 B.R. 802, 812 (Bankr. D.N.D. 2008) (debtor's lack of financial sophistication did not warrant denial of discharge); In re Aiken, 80 B.R. 971, 973 (Bankr. E.D. Mo. 1988) (lack of records was justified where books and records were locked in office due to non-payment of rent and not accessible by debtor).

Here, the Debtor has not come forward with any justification evidence. She has not produced any evidence suggesting that she lacked control over WES's operations and recordkeeping[10] or otherwise explaining why she either did not maintain or preserve WES's financial records. Her primary response to Gray's request for WES information was that, if the information exists, she would attempt to obtain the information from Clarence Johnson. However, she has not explained who Clarence Johnson is, what information she would expect him to possess, why he would have the information, or, more significantly, what might prevent her from obtaining the information from him.

The Debtor's response falls far short of stating a plausible justification for the failure to provide WES' financial records. The Debtor has stated only that she does not have the

---

[10]    The record shows that she was the President of WES. The only reasonable inference is the President of a company will have access to the company's financial records.

-19-

information without explaining why she lacks the information and without providing any factual

context that would permit a factfinder to draw the conclusion that her conduct was reasonable

under the circumstances.

At the summary judgment stage of this proceeding, the Debtor bore the burden of

producing evidence justifying her failure to maintain or produce the financial records of WES

sufficient to create a triable issue of fact. She has not met that burden. On the record presented, I

conclude that the Debtor has failed to come forward with any evidence that creates a triable issue

of fact as to whether her failure to provide the WES financial information "was justified under all

of the circumstances of the case," as required by §727(a)(3).


## IV. CONCLUSION

The Debtor's defense to Gray's objection to discharge boils down to her contention that

one year's worth of bank statements and a five-year-old federal income tax return for WES, a

business that she operated for seventeen (17) years, provide adequate information for creditors to

follow the revenue and expenditures of the business and thereby ascertain the Debtor's personal

financial condition. As explained in Part III.D, supra , I reject this argument and conclude that the

information the Debtor produced fails to satisfy the requirements of §727(a)(3). Because the

Debtor then presented no evidence justifying why she produced inadequate financial information,

I also conclude that:

> (1) there are no disputed issues of material fact;
>
> (2) the Plaintiff has established that the Debtor failed to keep or preserve records
> from which her financial condition might be ascertained;

(3) the Debtor has not come forward with evidence that her failure was justified; and,

(4) therefore, the Debtor's discharge must be denied under §727(a)(3).

An order consistent with this Memorandum will be entered.


Date:  __August 2, 2011__

_____
**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

-21-